IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CRYSTAL M. TAYLOR,              )
                                )
            Plaintiff,           )
                                )
       v.                        )      1:14CV629
                                )
CAROLYN W. COLVIN,              )
Acting Commissioner of Social Security, )
                                )
            Defendant.           )

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Crystal M. Taylor ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.     PROCEDURAL HISTORY

Plaintiff filed her applications for Disability Insurance Benefits and Supplemental Security Income Benefits on March 24, 2011. (Tr. at 218-28.)[1] Her alleged disability onset date of February 23, 2011 corresponds with her prior denial of benefits under the Act. (Tr. at 95-112.) Her applications were denied initially (Tr. at 113-44) and upon

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #7].

reconsideration (Tr. at 145-74). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 213-14.) Following the subsequent hearing on October 11, 2012 (Tr. at 53-94), the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act (Tr. at 11-23). On June 10, 2014, the Appeals Council denied review, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-5).

II.  LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date. Plaintiff therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments: migraine headaches, sleep apnea, obesity, bipolar disorder, and depression. (Tr. at 15.) The ALJ found at step three that none of these impairments met or equaled a disability listing. (Tr. at 16.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform medium work with myriad postural and environmental limitations. (Tr. at 17-18.) With respect to Plaintiff's mental impairments, as part of the RFC, the ALJ found that Plaintiff "is able to understand, remember[,] and carry out simple one or two step instructions/tasks" and is "able to interact appropriately with supervisors, coworkers, and the public in a routine work setting." (Tr. at 18.)

Based on this determination and the testimony of an impartial vocational expert, the ALJ determined at step four of the analysis that Plaintiff could perform her past relevant work as an "automatic seaming machine operator, sock folder, or sock bagger." (Tr. at 21.) In the alternative, the ALJ concluded at step five, that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the vocational expert regarding those factors, she could perform other jobs available in the national economy and therefore was not disabled. (Tr. at 21-22.)

Plaintiff contends that all of the jobs identified by the vocational expert in the present case, as defined in the <u>Dictionary of Occupational Titles</u> ("DOT"), arguably involve a Reasoning Development Level (hereinafter "Reasoning Level") of 2 on the DOT's six-level scale. She now contends that that her RFC restriction to "simple one or two step instructions/tasks" renders her incapable of performing jobs classified above a Reasoning Level of 1. Therefore, Plaintiff contends that the ALJ erred in finding her capable of performing work which exceeds her mental RFC.

A job rated at Reasoning Level 1 requires the worker to "[a]pply commonsense understanding to carry out simple one- or two-step instructions" and to "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." U.S. Dept. of Labor, DOT, App. C, available at 1991 WL 688702. In comparison, a job rated at Reasoning Level 2 requires the worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." A Level 2 job also requires the worker to "[d]eal with problems involving a few concrete variables in or from standardized situations." <u>Id.</u> In this case, Plaintiff

6

contends that the mental restrictions in the RFC correspond with that of Reasoning Level 1, and that the identified positions at steps four and five exceed her RFC.

In response to this contention, Defendant first contends that Plaintiff could perform the positions of sock folder and sock bagger, even at a Reasoning Level 1. As to this issue, the Court notes that the occupation listings for sock folder and sock bagger have a Reasoning Development Level 1, while the position of automatic seaming machine operator has a Reasoning Development Level of 2. Plaintiff argues that her past work, as identified at her hearing, should have been considered a composite job, as it involved the combined duties of an automatic seaming machine operator, sock folder, and sock bagger. Because a composite job has no equivalent in the DOT, "the ALJ must find the Plaintiff capable of performing the composite job only if he or she can perform all parts of the job" as it was actually performed. Shealy v. Colvin, No. 8:13-2383-RMG, 2015 WL 467726, at *12-13 (D.S.C. Feb. 4, 2015) (collecting case law noting that "an ALJ may not deem a plaintiff capable of performing past relevant work by dividing the demands of a composite job into two separate jobs and finding him or her capable of performing the less demanding of the two jobs," and "if Plaintiff's past job was in fact a composite job, the [Administration's Program Operations Manual System] would have prohibited the ALJ from deciding whether Plaintiff could perform his past relevant work as it is generally performed"). Defendant has not specifically addressed this issue, and even more importantly, the ALJ did not specifically address this issue, and it appears that in this case, Plaintiff's past work arguably involved at least one component with a Reasoning Level of 2. (Tr. at 21, 88-89 (citing DOT 786.682-

7

078, 1991 WL 681025; DOT 363.687-014, 1991 WL 673026; and DOT 582.687-010, 1991 WL 684303).)

Defendant next contends that the Plaintiff's past work was classified as work with a Specific Vocational Preparation (SVP) of 1 or 2, which was within Plaintiff's RFC, and that Plaintiff had a high school education, which was more than sufficient to qualify her for the unskilled positions identified here. However, the SVP for the positions and the designation as "skilled" or "unskilled" are separate vocational considerations that do not address Plaintiff's contentions with respect to Reasoning Level. See Hann v. Colvin, No. 12-cv-06234-JCS, 2014 WL 1382063, at *16 n.9 (N.D. Cal. Mar. 28, 2014) (unpublished) ("The Court rejects the Commissioner's first argument to the extent that it depends on the SVP to show consistency between the DOT and the VE's testimony, because the Commissioner 'conflat[es] two separate vocational considerations.' An SVP gauges 'the amount of lapsed time it takes for a typical worker to learn the job's duties.' In contrast, a Reasoning Level gauges 'the minimal ability a worker needs to complete the job's tasks themselves.' Accordingly, the SVP is inapposite to the analysis of whether the DOT's definition of Reasoning Level 2 is consistent with the VE's testimony regarding jobs that [the claimant] could perform with her RFC limitation to one- to two-step instructions." (internal quotations omitted)); see also Gonzalez v. Astrue, No. 1:10-cv-01330, 2012 WL 14002, at *13 (E.D. Cal. Jan. 4, 2012) ("'Unskilled work,' however, as used by the DOT and the Commissioner's regulations, does not necessarily conflate with jobs that involve only simple one- to two-step instructions. These are two separate vocational considerations. . . . In

8

other words, not all 'unskilled' jobs will necessarily be limited to the simplest level of work involving only one- or two-step instructions.").

Finally, Defendant notes that this Court has previously concluded that a limitation to "simple, routine, repetitive tasks" is not inconsistent with a Reasoning Level 2. See, e.g., Hall v. Colvin, No. 1:11CV428, 2015 WL 401756, at *8-9 (M.D.N.C. Jan. 28, 2015) (unpublished); Durham v. Colvin, No. 1:10CV405, 2015 WL 457939 (M.D.N.C. Feb. 3, 2015); Green v. Colvin, No. 1:10CV561, 2013 WL 3206114, at *8-9 (M.D.N.C. June 24, 2013) (unpublished). Indeed, district courts have generally recognized that "there is no 'neat, one-to-one parallel' that exists between the SSA's classifications regarding RFCs and the DOT's definitions of Reasoning Levels." Hann v. Colvin, No. 12-cv-06234-JCS, 2014 WL 1382063, at *16 (N.D. Cal. Mar. 28, 2014) (unpublished) (quoting Meissl v. Barnhart, 403 F. Supp. 2d 981, 984 (C.D. Cal. 2005)). "The Social Security regulations separate a claimant's ability to understand and remember things and to concentrate into just two categories: 'short and simple instructions' and 'detailed' or 'complex' instructions." Meissl, 403 F. Supp. 2d at 984. In contrast, the DOT "employs a much more graduated, measured and finely tuned scale." Id. Accordingly, this Court has rejected the proposition that "'all jobs with a reasoning level of two or higher are all encapsulated within the regulations' use of the word "detail,"'" and has instead held that a plaintiff limited to work involving simple and repetitive tasks can perform jobs with a Reasoning Level of 2. Hall, 2015 WL 401756, at *9 (quoting Meissl, 403 F. Supp. 2d at 984). However, the present case involves an RFC not with a limitation to "simple, routine, repetitive tasks" or even "one or two step instructions," but instead limits Plaintiff to "*simple* one or two step instructions/tasks," which is more directly

9

analogous to Reasoning Level 1's description of work requiring "commonsense understanding to carry out simple one- or two-step instructions." Defendant has not addressed case law making a distinction on this basis. See, e.g., Santos v. Astrue, 709 F. Supp. 2d 207 (S.D.N.Y. 2010); Grigsby v. Astrue, No. EDCV 08-1413, 2010 WL 309013 (C.D. Cal. Jan. 22, 2010). "Whether an RFC limitation for simple, one- to two-step instructions is compatible with DOT reasoning level two . . . appears to be predicated on the particular facts of each case and what the ALJ or the physician's words of limitation meant in the context of the medical evidence in the record." Gonzales v. Astrue, No. 1:10-cv-01330-SKO, 2012 WL 14002, at *12 (E.D. Cal. Jan. 4. 2012) (unpublished). In this case, the parties have not addressed this issue, particularly with respect to the meaning of the ALJ's limitations in the context of the medical record, and no explanation of this issue is included in the ALJ's decision. Because the parties have not specifically addressed this issue in their briefing, the Court would be inclined to set this matter for a hearing or for further briefing on this narrow issue.

However, the Court notes that after the parties submitted their briefing in this case, the Fourth Circuit issued its decision in Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015), addressing the separate question of whether and how moderate limitations in concentration, persistence, and pace found at step three must be accounted for in the RFC assessment. In Mascio, the Fourth Circuit held that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." Id. (quotation omitted). This is because "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would

10

account for a claimant's limitation in concentration, persistence, or pace." The Fourth Circuit further noted that "[p]erhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order." Id. (internal citation omitted).

In the present case, at step three, the ALJ found that in social functioning, Plaintiff has moderate difficulties because "she does not like being around many people because she gets anxious and sometimes has panic attacks." (Tr. at 17.) The ALJ further found that with regard to concentration, persistence or pace, Plaintiff has moderate difficulties, based on her testimony that "she cannot finish a book she is reading or finish a movie she is watching, due to her sleep apena." In establishing the RFC, the ALJ concluded, as noted above, that Plaintiff "is able to understand, remember[,] and carry out simple one or two step instructions/tasks" and is "able to interact appropriately with supervisors, coworkers, and the public in a routine work setting." (Tr. at 18.) However, there is no explanation for the basis for this determination or how this limitation takes into account the moderate difficulties noted above, particularly with respect to Plaintiff's moderate difficulties with concentration, persistence, and pace due to sleep apnea. Moreover, the ALJ noted Plaintiff's allegation that her affective disorder prevented her from remembering complex instructions (Tr. at 18), and this, rather than sleep apnea, is the only apparent basis in the ALJ's decision

11

for the RFC limitation to simple one or two step instructions. It appears that the ALJ may have concluded that no work limitations were appropriate because Plaintiff's treating psychiatrist characterized her ability to sustain concentration as "[a]dequate, but slow" in his May 31, 2011 Psychiatric Evaluation (Tr. at 19, 367), and because Plaintiff told her physician that the "assigned CPAP machine was helpful" and overall she was "doing well," although the physician noted that she would be following up with another physician who was treating her sleep apnea. (Tr. at 20, 459). Nevertheless, it is unclear how the ALJ reconciled this conclusion with his prior determination of Plaintiff's limitations at step three.

In addition, in establishing the RFC in the present case, the ALJ gave "partial weight" to a state agency evaluation that included a finding of moderate limitations in concentration and pace, but the ALJ did not address the mental aspect of this evaluation, focusing instead on the exertional limitations. (Tr. at 19, 130-44.) Compare Geisler v. Comm'r of Soc. Sec., No. SAG-14-2857, 2015 WL 4485459, at *5 (D. Md. July 21, 2015) ("Because this case involves a step three finding that Mr. Geisler suffers from moderate difficulties in concentration, persistence, or pace, and an RFC limitation to 'simple, routine tasks or unskilled work,' Mascio is implicated. However, three critical factors render this case distinguishable from Mascio: (1) the explanation offered by the ALJ at step three, (2) the explanation offered by the ALJ in support of his RFC assessment, and (3) the language used in the RFC assessment itself. Because the ALJ in this case articulated that it was precisely due to Mr. Geisler's diminished abilities with respect to more-than-simple instructions and more-than-routine tasks that he found moderate difficulties in concentration, persistence, or pace, and because he explicitly related his RFC limitation of "simple, routine, repetitive 1 or

2 step tasks" to Mr. Geisler's difficulties in concentration, persistence, or pace, there is no internal inconsistency in the ALJ's decision."). Given the lack of explanation and apparent inconsistency in the present case, it appears that remand is required in light of Mascio, to allow the ALJ to address these issues in the first instance. See Franklin v. Colvin, No. 5:14-cv-84, 2015 WL 4510238, at *2 (W.D.N.C. July 24, 2015) ("The court agrees with Defendant that the ALJ provided a justifiable explanation for his finding that Plaintiff suffered from moderate limitations in concentration, persistence, and pace, but the court cannot overlook that the ALJ did not then reference these limitations in the residual functional capacity that the ALJ submitted. Defendant suggests that the ALJ's finding that Plaintiff 'can perform simple, one-two step tasks in a low stress work environment, defined as one that does not involve production/assembly-line/high-speed work or contact with the public' is a proper accounting for Plaintiff's moderate limitations in concentration, persistence, and pace. However, the court believes that under current Fourth Circuit precedent, the ALJ must directly explain how he accounted for Plaintiff's moderate limitations in concentration, persistence, and pace in Plaintiff's residual functional capacity, such that the court may properly review the ALJ's analysis."); see also, e.g., Culver v. Commissioner, No. SAG-14-432, 2015 WL 4485268 (D. Md. July 21, 2015); Hagedorn v. Colvin, No. 2:12CV85-RLV, 2015 WL 4410288 (W.D.N.C. July 20, 2015); Taylor v. Colvin, No. 7:14CV00616, 2015 WL 4400534 (W.D. Va. July 17, 2015); Wade v. Colvin, No. 7:14CV00569, 2015 WL 4404849 (W.D. Va. July 17, 2015); Hemp v. Commissioner, No. SAG-14-2855, 2015 WL 4111483 (D. Md. July 7, 2015); Winkler v. Commissioner, No. SAG-14-2720, 2015 WL 4069334 (D. Md. July 2, 2015); Franklin v. Colvin, No. 5:14cv84, 2015 WL 4508635 (W.D.N.C. June 24,

2015); Malpass v. Colvin, No. 7:14-CV-164-BO, 2015 WL 3409193 (E.D.N.C. May 27, 2015); Bailey v. Colvin, No. 5:14-CV-0248, 2015 WL 2449044 (D.S.C. May 21, 2015); Talmo v. Commissioner, No. ELH-14-2214, 2015 WL 2395108 (D. Md. May 19, 2015); Scruggs v. Colvin, No. 3:14-cv-00466, 2015 WL 2250890 (W.D.N.C. May 13, 2015); Bradford v. Commissioner, No. WMN-14-2016, 2015 WL 1919643 (D. Md. Apr. 27, 2015); Hill v. Commissioner, No. GLR-14-2872, 2015 WL 1893308 (D. Md. Apr. 24, 2015); Salmon v. Colvin, 1:12CV1209, 2015 WL 1526020 (M.D.N.C. Apr. 2, 2015). Because remand is required to further address this Mascio issue, any issues regarding the Reasoning Level of the relevant positions and their compatibility with the RFC can be addressed on remand. Therefore, the Court will recommend that this matter be remanded for further proceedings consistent with this opinion.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #14] should be DENIED, and Plaintiff's Motion to Reverse the Decision of the Commissioner [Doc. #11] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 10th day of August, 2015.

/s/ Joi Elizabeth Peake
United States Magistrate Judge